JOHN H. BOUSE, REGISTER OF WILLS, *v.* THOMAS
BURLING HULL ET AL., EXECUTORS AND TRUSTEES
[No. 54, October Term, 1934.]

2

[REDACTED]

*Decided January 15th, 1935.*

[REDACTED]

The cause was argued before BOND, C. J., URNER, OFFUTT, and SLOAN, JJ.

*Willis R. Jones, Deputy Attorney General,* with whom was *William Preston Lane, Jr., Attorney General,* on the brief, for the appellant.

*John C. Paterson,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Anne W. Janney, a resident of Baltimore City, died on January 30th, 1933, leaving a last will which was probated in the Orphans' Court of that city on February 7th, 1933. In that will she left to the Baltimore Yearly Meeting of Friends $5,000; to the American Friends' Service Committee $5,000; and to the Corporation Trustees of the Philadelphia Yearly Meeting of Friends $2,000. Each of those legatees, by a formal and effective written renunciation filed in the orphans' court, renounced the legacy thus made to it. As a result of the renunciations, the legacies fell into the residuum of the estate and passed to direct descendants of the testatrix, under the residuary clause in the will. Notwithstanding those renunciations, John H. Bouse, the register of wills of Baltimore City, acting for and on behalf of the State of Maryland, claimed that the estate and the executors of the will were "liable

to the payment" of the state collateral inheritance tax on those legacies. The executors denied that they were subject to any such liability, and on June 5th, 1934, the register of wills commenced this action in the Superior Court of Baltimore City to recover the tax so claimed. It was tried as a "Special Case Stated" before the court sitting as a jury, who, at the conclusion of the trial, found a verdict for the defendants, upon which the judgment from which this appeal was taken was entered.

The only question presented by the appeal is whether the legacies described above are subject to the collateral inheritance tax imposed by Code (Supp. 1929), art. 81, sec. 105, nothwithstanding the fact that each of the three legatees effectively renounced the legacy left to it.

So much of the statute as is material to that question reads as follows: "All estates, real, personal and mixed, * * * passing from any person who may die seised and possessed thereof, being in this State, either by will or under the intestate laws of this State, or any part of such estate or estates, money or securities, or interest therein, transferred by deed, grant, bargain, gift or sale, made or intended to take effect in possession after the death of the grantor, bargainor, devisor or donor, to any person or persons, or bodies corporate, in trust or otherwise, other than to or for the use of the father, mother, husband, wife, children and lineal descendants of the grantor, bargainor or testator, donor or intestate shall be subject to a tax of five per centum in every hundred dollars of the clear value of such estate."

The appellant contends that the effect of the will was to "pass" the legacies to the several legatees, and that the several renunciations respectively made by them operated as a "reconveyance of the legacies to the direct descendants of the decedent." The appellee asserts the converse of that theory.

By the terms of the statute, the tax is imposed on an estate which in fact passes to a person other than one falling within the classes excepted from its operation. The determination of the question is controlled, therefore, by

the meaning to be given to the word "passing." If a legacy passes upon the mere probate of a valid will in which it is made, obviously it is subject to the tax; if it does not so pass, it is not subject to the tax.

It is settled law that a devisee may renounce a devise. Ordinarily, where the devise is beneficial to him, it will be presumed that he accepted it (*Chilcoat v. Reid,* 154 Md. 385, 140 A. 100), but the presumption is a rebuttable one, and, where it is sufficiently shown that the devisee effectively renounced the legacy, the presumption is completely destroyed. In such a case, the devise remains in the body of the estate, and its subsequent devolution is controlled by the terms of the will or the law of descent and distribution as the case may be. *Woerner, Amer. Law of Administration,* pp. 1479, 1495; *Wolfe's Estate,* 89 App. Div. 349, 85 N. Y. S. 949, affirmed, *Id.,* 179 N. Y. 599, 72 N. E. 1152. The principle thus stated with respect to devises applies with at least equal force to legacies. *Id.*

But, while it is not disputed that a devisee or legatee under a will may renounce the legacy or devise, it is contended that his renunciation does not prevent the gift from becoming consummate upon the death of the testator, and that, since that is true, it "passes" within the meaning of the statute to the beneficiary, and at once becomes subject to the tax. Such a construction of the statute is not only strained and artificial, but is consistent neither with common sense nor the apparent intent of the Legislature.

The first and most important rule of statutory construction, and one to which all other rules and considerations must yield, is that which imposes the obligation of ascertaining and giving effect to the legislative intent. In searching for that intent, the words employed in the statute are to be given their "plain, ordinary and natural import" (*Levering v. Park Commrs.,* 134 Md. 54, 106 A. 176; *Overton v. Harrington,* 126 Md. 35, 94 A. 325; *Purnell v. Shriver,* 125 Md. 271, 93 A. 518), unless a different meaning is clearly indicated by the context and purpose of the statute.

The natural and ordinary meaning of the verb "pass" as used in the statute is equivalent to, and synonymous with "transfer" *(Bank of Commerce v. McLemore,* 162 Tenn. 137, 35 S. W. (2nd) 31, 32), and, under the principle invoked in *Levering v. Park Commrs., supra,* the tax created is only imposed in cases where the estate has actually been transferred or has passed. But, if the beneficiary is at liberty to accept or reject the gift, it never is transferred to him and never does pass to him under the will, if he refuses to accept it. To hold otherwise would be to say that, while he may refuse to accept, whether he accepts it or not the title to the gift vests in him by the concurrent operation of the will and the law, at the death of the testator. If that were true, it is clear that the right of such a beneficiary to renounce the gift might depend upon the rights of others, as for instance, creditors, rather than upon his own will or purpose, but no case has been called to our attention in which that has been held. On the contrary the weight of authority supports the rule that, where a legatee or devisee renounces a devise or legacy made to him in a will, without having previously done anything inconsistent with such renunciation, the gift is not completed, and does not therefore pass to the legatee or devisee *(Albany Hospital v. Albany Guardian Society,* 214 N. Y. 435, 108 N. E. 812), and that he takes no interest in the property devised or bequeathed which is subject to be seized or taken in satisfaction of claims against him.

In *Bradford v. Calhoun,* 120 Tenn. 53, 109 S. W. 502, 504, it is said: "It is optional with the devisee to accept the devise, however beneficial it may be to him; and when he elects to renounce, before any act on his part indicating an acceptance, his renunciation shall relate back, and will be held to have been made at the time of the gift, and will displace any levy of creditors that may in the meantime have been made."

Some early English and some American cases, reviewed in *Welch v. Sackett,* 12 Wis. 243, announced the difficult doctrine that property may be granted or otherwise trans-

ferred, not only without the consent or even the knowledge of the transferee, but against his will. The invention of that doctrine, it is said in the case last cited, is attributable to Justice Ventris, who stated it as a minority view in *Thompson v. Leach*, 2 Vent. 198, about 1690. But the more logical, and what has come to be widely accepted as the sounder, view, is that stated in *Townson v. Tickell*, 3 B. & Ald. 37, that "an estate cannot be forced on a man. A devise, however, being *prima facie* for the devisee's benefit, he is supposed to assent to it, until he does some act to show his dissent. The law presumes that he will assent until the contrary be proved; when the contrary, however, is proved, it shows that he never did assent to the devise, and, consequently, that the estate never was in him." *Welch v. Sackett, supra; Defreese v. Lake,* 109 Mich. 415, 67 N. W. 505; *Bradford v. Calhoun, supra; Matter of Stone's Estate,* 132 Iowa, 136, 109 N. W. 455; cases collected, *Ann. Cas.* 1916D. 199.

If acceptance is necessary to complete a transfer of property by deed, will or otherwise, and the transferee refuses to accept the grant, legacy, or devise, certainly there is no transfer, and title to the property remains in the grantor, or, in the case of a will, precisely where it would have been had no such legacy or devise been made.

If the statute is read with those obvious conclusions in mind, it is apparent that it was not intended to apply to such a case as this, but to cases in which there is an actual transfer of property. It speaks of estates "passing" either by will or by the intestate laws of the state, or "transferred" by deed, bargain, grant, gift, or sale, made to take effect after the death of the grantor, bargainor, devisor, or donor, and uses "passing" as synonymous with "transferring." The tax imposed by the statute is not upon the estate or property devised or bequeathed, nor is it upon the right to transmit property, but upon the right to take property by will, inheritance, or succession (*Good Samaritan Hospital v. Dugan,* 146 Md. 383, 126 A. 85, 88), and, as stated in that case by Judge Pattison for this court: "The executor or administrator pays the tax, but

he pays it for the legatees or heir, either out of his legacy or distributive share of the estate, or with money collected from him; and in case of real estate the tax becomes a lien upon it until the tax is paid, and in such case the executor or adminstrator is directed to sell the real estate for the payment of the tax should the legatee or heir fail to pay it." That intention is emphasized by those provisions of the statute which fix the measure of the tax as "five per centum of every hundred dollars of the clear value of such estate."

So, when the court in the case last cited speaks of the "right" of the legatee or heir to receive his legacy or his share of the estate, it refers to a "right" which not only may, but in fact does, become consummate in possession or the right to possession; otherwise the tax would be, not upon the right to receive, but upon the right to elect whether to receive or not. If the tax were upon the privilege of election rather than upon the right to receive, it might be deducted twice from the same property, as where the testator left no heirs or distributees within the excepted classes, in which case the right of the person or persons who actually and finally receive the estate described in the rejected devise or legacy to receive the same would be subject to the tax. On the other hand, if the testator did leave heirs or distributees within the excepted classes who would take the rejected legacy or devise either as heirs, distributees, or legatees, to impose the tax upon the mere right of the renouncing legatee to say whether he would or would not accept the estate devised or bequeathed to him would lessen the value of the estate ultimately devolving upon some person or persons within the excepted classes. Such a construction would defeat the plain purpose of the statute, which is to permit persons within the excepted classes to take the estate or property, devolving upon them as heirs, distributees, grantees, devisees, legatees, or donees, free from the tax.

That conclusion is supported by the emphasis placed by the court on the rules for computing the tax in such cases as *State v. Dalrymple*, 70 Md. 295, 17 A. 82, 84;

*Fisher v. State,* 106 Md. 121, 66 A. 661, 663 ; *Safe Deposit & Trust Co. v. State,* 143 Md. 644, 123 A. 50; *Lilly v. State,* 156 Md. 94, 143 A. 661, 665; *Downes v. Safe Deposit & Trust Co.,* 164 Md. 293, 164 A. 874, 876. In *State v. Dalrymple* it is stated that the amount of the tax will depend upon the sum in the hands of the administrators, "payable to the legatee," and that "one of the conditions upon which strangers and collateral kindred may acquire a decedent's property, which is subject to the dominion of our laws, is that there shall be paid out of such property a tax of two and one-half per cent. into the treasury of the State." In *Fisher v. State* it is said: "The manifest intention of the Legislature was to tax the transmission of all property to collaterals situate in the state, as provided by the statute, and to require the payment of the tax as a premium for the enjoyment of the benefit thereby secured." In *Safe Deposit & Trust Co. v. State,* page 646 of 143 Md., 123 A. 51,, reference is made to "the general intent of the law that the tax shall apply to the amount of the estate distributed has been definitely recognized by this court in the two cases we have cited." In *Lilly v. State* it is said: "There could be no transfer or enjoyment of the property, by the beneficiary in this case, until the death of Mrs. Johnston, and this being so, the collateral inheritance tax was payable upon the clear value of the estate at her death, and at the time the collateral beneficiary received the benefit of the bequest and devise, under the will." In *Downes v. Safe Deposit & Trust Co.,* referring to an amendment to the statute, it is said that it "did not impose upon him the burden of paying a tax upon an amount larger than that which he received."

In all of those cases the court has interpreted "passing" and "transferred" as meaning an actual devolution of property and not a mere right to elect whether there shall be such a devolution.

Other courts, in construing the same or synonymous expressions in statutes peculiar to their respective jurisdictions, have reached the same conclusion. In *Matter of Stone's Estate,* 132 Iowa, 136, 109 N. W. 455, 457, re-

ported also in 10 Ann. Cas. 1034, it is said: "It follows that, if the renunciation of Lucia W. Stone and the agreement of settlement of the estate to which she was a party were effectual, then she took no interest subject to the inheritance tax, and no such tax could be collected out of the property of the estate or with respect to the real property of the deceased." See, also, cases collected in note, 10 *Ann. Cas.* 1036.

In *State v. Probate Court*, 143 Minn. 77, 172 N. W. 902, 903, it is said: "The intention of the act is to compute the tax upon the value of the property which is received by an heir, or legatee out of a decedent's estate, and upon nothing else," and, quoting from *Wolfe's Estate, supra:* " 'If the legatee renounce the gift and refuse to receive it, no tax can be collected with respect to him, because there has been no transfer to him. His right to renounce the privilege of accepting the donation is not denied or forbidden by the statute, and such right is recognized by the authorities, or some of them, which I have cited. On his effective renunciation the title to or ownership of the property of the gift remains in the estate, to be disposed of under the terms of the will, and the succession is taxable in accordance with the nature of the ultimate devolution'."

That interpretation of "passing" and "transferred" as used in section 105 is also implicit in this language, which occurs in section 106, Code, Supp. 1929, art. 81: "Every executor * * * before he pays any legacy or distributive share of any estate liable to the tax imposed by Section 105, shall pay to the Register of Wills of the proper county or city, five per centum of every hundred dollars he may hold for distribution among the distributees or legatees, except as hereinafter provided."

It follows that, in our opinion, the tax created by Code, Supp. 1929, art. 81, secs. 105, 106, may not lawfully be imposed upon the renounced legacies, and the judgment of the trial court will be affirmed.

*Judgment affirmed.*