Dear Ms. Dauenhauer:
You have requested our opinion whether certain expenses are deductible from non-probate estates in determining the value of the estate for inheritance tax purposes. More specifically, you asked about the continuing validity of a prior Attorney General's opinion, 44 Opinions of the Attorney General 337 (1959), in which this Office opined that expenses ordinarily deductible from probate estates are deductible from non-probate trust estates when the trust instrument expressly so provides.
Our opinion is that the conclusion in the 1959 opinion remains valid. At the same time, we acknowledge that this conclusion leads to inconsistent treatment of probate and non-probate estates in certain respects. Further, this conclusion results in a potential loss of State revenue. Whether these problems suggest the need for legislative change is a policy issue meriting careful study.
 I Background
A. General Scope of Inheritance Tax
The Maryland inheritance tax is imposed on the privilege of receiving property that passes from a decedent and has a taxable situs in this State. Section 7-202 of the Tax-General ("TG") Article, Maryland Code. The tax applies to probate and non-probate property alike and is imposed on the "clear value" of the property passing. TG § 7-204. "Clear value" is defined in TG § 7-204(a) as "the fair market value minus expenses." The term "expenses" is not defined.
B. The 1959 Opinion
In 44 Opinions of the Attorney General 337, Attorney General Sybert was asked whether certain expenses ordinarily deductible from a decedent's probate estate could be deducted from a non-probate trust. The trust instrument addressed in the 1959 opinion expressly provided for the trustee to pay the following: debts of the decedent that the trustee concluded to be valid; the expenses of the decedent's last illness and burial; all inheritance and succession taxes; reasonable compensation to the trustee; and all costs, expenses, and attorneys' fees. The decedent's probate estate was insufficient to pay all of the traditional debts and expenses of administration.
The 1959 opinion concluded that such expenses were deductible from a non-probate trust in calculating inheritance tax. This conclusion reflects an unelaborated application of the reasoning of prior opinions that dealt with application of a parole trust for payment of funeral expenses and debts from joint tenancy property.[1] These earlier opinions relied on the equitable argument that since the expenses would be deductible if there were a probate estate, there appeared to be no good reason to apply a different rule if the expenses were to be paid out of non-probate assets. See, e.g., 22 Opinions of the Attorney General 719, 720 (1937).
These opinions are thinly reasoned at best. If the issue were newly presented, we might have reached a different result. Yet, "[w]e do not overrule a prior opinion simply because we might have resolved a close question the other way, were we first presented with it." 72 Opinions of the Attorney General 200, 202 (1987). In this instance, as we explain in Part II below, the conclusion in the 1959 opinion is bolstered by subsequent legislative acquiescence.
 II Legislative Acquiescence
At the time of the 1959 opinion, the inheritance tax was codified in various sections of former Article 81. For example, the tax on collaterals was 7.5 percent "of the clear value of any and all property . . . passing at the death of any . . . decedent. . . ." Former Article 81, § 150.
Between 1959 and a major recodification in 1988, the inheritance tax was the subject of periodic legislative attention. For example, the General Assembly amended former Article 81, § 150 a half-dozen times. Yet the General Assembly left undisturbed the Attorney General's 1959 interpretation.
In Chapter 2 of the Laws of Maryland 1988, the General Assembly recodified the inheritance tax as TG Title 7, Subtitle 2. As before, the recodified statute imposed the tax on the "clear value" of property. TG § 7-204(b) and (c). The term "clear value" was defined as "fair market value minus expenses." TG § 7-204(a). The Revisor's Note following TG § 7-204 indicates that subsection (a) is new language added to clarify the term of art "clear value" and refers to Bouse v. Hutzler, 180 Md. 682, 686, 26 A.2d 767
(1942) "[f]or a discussion of `clear value.'"
While the term "clear value" is defined in the statute and discussed in the cited case, the General Assembly did not separately define the term "expenses" as used in TG § 7-204(a). In other words, the General Assembly did not take the occasion to change the interpretation of "expenses" in the 1959 opinion.
Nor has the Court of Appeals done so in the exercise of its rule-making authority. The reference to "expenses," without definition or discussion, has been carried over into the Application to Fix Inheritance Tax on Non-probate Asset set forth in Rule 6-405, adopted by the Court of Appeals by order dated June 28, 1990.
Although opinions of the Attorney General are non-binding interpretations of the law, the General Assembly is deemed to be aware of the opinions when enacting subsequent revisions or recodifications. The General Assembly, observed the Court inState v. Crescent Cities Jaycees, 330 Md. 460, 470, 624 A.2d 955
(1993), "is presumed to have known of the Attorney General's statutory interpretation and to have acquiesced in that construction absent change in the statutory language . . . ." This rule of construction applies to the term "expenses," as used in the statutory definition of "clear value." In light of the legislative acquiescence, the term "expenses" is best construed as including the expenses that 44 Opinions of the Attorney General 337 opined are deductible from non-probate assets.
 III Deductible Expenses
The Estates and Trusts ("ET") Article contains several provisions governing debts and expenses that are deductible from probate assets. Under ET § 8-105, which establishes a priority of payment if the estate assets are insufficient to cover all obligations, the allowable expenses are itemized as follows:
(1) Fees due to the register;
 (2) Costs and expenses of administration;[2]
 (3) Funeral expenses as provided in [ET] § 8-106 . . .;
 (4) Compensation of personal representative as provided in [ET] § 7-601 . . ., for legal services as provided in [ET] § 7-602 . . ., and commissions of licensed real estate brokers;
 (5) Family allowance as provided in [ET] § 3-201 . . .;
(6) Taxes due by decedent;
 (7) Reasonable medical, hospital, and nursing expenses of the last illness of decedent;
 (8) Rent payable by decedent for not more than three months in arrears;
 (9) Wages, salaries, or commissions for services performed for the decedent within three months prior to death of the decedent;
 (10) Old age assistance claims under Article 88A, § 77 of the Code; and
(11) All other claims.
Under ET § 7-304, all these expenses are chargeable against the principal of the estate.
These provisions in the Estates and Trust Article apply to the administration of probate estates, not to non-probate estates; the provisions of the Tax-General Article applicable to the imposition of inheritance tax on non-probate assets do not expressly refer to these deductions. However, as stated in Part II above, the term "expenses" as used in TG § 7-204(a) and Rule 6-405 is deemed to include these obligations.
 IV Inconsistencies and Potential Revenue Loss
Application of the deductions to non-probate assets, for purposes of determining clear value for imposition of inheritance tax, causes certain inconsistencies in treatment and a potential reduction in the amount of tax imposed. In identifying the problems, however, we do not wish to be understood as commenting on whether the result is wise as a matter of public policy. That issue must be left to the General Assembly, which has authority to set the public policy with regard to the imposition of taxes and the applicable deductions.
One inconsistency relates to the reasonableness of the amount of the expenses deducted. With respect to the expenses deducted from probate estates, the court has authority to determine the reasonableness of the amount of certain costs and fees. For example, the court has authority to determine reasonableness of appraisal fees, ET § 7-202(d); funeral expenses, ET § 8-106(b); compensation of the personal representative, ET § 7-601(b); and attorney's fees, ET § 7-602. Moreover, the court has authority in the context of the probate estate to determine the reasonableness of the aggregate compensation paid to the personal representative and attorney. ET § 7-602(c).
The court does not have concomitant authority to determine the reasonableness of the amount of the expenses deducted from the value of non-probate estates for purposes of imposing inheritance tax. Thus, funeral expenses, attorney's fees, and the like, in amounts not checked for reasonableness, may be deducted from the fair market value of non-probate assets to determine clear value for imposition of inheritance tax. This results in disparate treatment between probate and non-probate estates and potentially reduces the amount of tax imposed on the non-probate assets.
Additionally, while costs incurred after the death of the decedent to maintain the probate assets during administration of the estate are deductible expenses of administration, thereby reducing the "clear value" of the assets for purposes of imposing inheritance tax, that reduction in clear value may be offset by a revision in the appraised value of the assets if there is a significant increase in the fair market value of the assets during administration. The law expressly allows probate assets to be revalued, if appropriate, at any time before the estate is closed. ET § 7-204. See Downs v. Safe Deposit Trust Co., 164 Md. 293,300, 164 A. 874 (1933); Bouse v. Hull, 168 Md. 1, 8,176 A. 645 (1935); 51 Opinions of the Attorney General 198, 199-200 (1966). This is so because probate assets pass to the personal representative upon the decedent's death, pursuant to ET § 1-301; they do not pass to the legatee or devisee until distribution by the personal representative. For that reason, the law requires the inheritance tax to be determined and paid when the personal representative accounts for and distributes the assets. TG § 7-217(a).
By contrast, there is no provision for revaluation of non-probate assets.[3] This is so because non-probate assets vest in possession in the beneficiary at the time of the decedent's death.[4] The "clear value" for inheritance tax purposes and the responsibility for payment of the tax are fixed when the appraisal is made and the register determines the amount of tax due. TG § 7-217(b); Mercantile Safe Deposit Trust Co. v.State ex rel. Shaughnessy, 264 Md. 455, 287 A.2d 502 (1972). Therefore, there is no possibility of offsetting the reduction in clear value that results in the deduction of expenses of administration, even when those expenditures may result in an increase in the fair market value of the assets.
Another inconsistency arises with respect to the compensation to the register of wills for the work of reviewing documentation submitted to support the expenses deducted. Under ET § 2-206, the register is entitled to fees for the work performed in connection with the administration of probate estates. There is no provision for compensation to the register for the work performed under TG § 7-214 in determining the amount of inheritance tax due in connection with non-probate assets. Were the determination limited to reviewing the inventory and appraisal, the amount of uncompensated work would not be great. However, when determination of the tax requires review of documentation supporting a myriad of expenses that are being deducted from the appraised value to ascertain clear value, the amount of uncompensated work becomes substantial. An increase in use ofinter vivos trusts has necessitated the hiring of additional personnel in the register's office.
 IV Conclusion
In summary, it is our opinion that expenses ordinarily deductible from probate assets to determine clear value for imposition of inheritance tax are likewise deductible from non-probate assets when the instrument creating the non-probate estate expressly provides for the payment of such expenses. We adhere to the conclusion to that effect in 44 Opinions of theAttorney General 337. Any inconsistencies or effect on tax revenue resulting from application of the deductions to non-probate property are issues for the General Assembly to address.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Susan P. Whiteford Assistant Attorney General
 Julia M. Freit Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
[1] Prior to 1941, a long line of Attorney General opinions concluded, in instances involving joint bank accounts, that funeral expenses and debts of the decedent could be deducted from the account balance passing to the surviving owner if the existence of a parole trust on the account for payment of such expenses was established as a matter of fact. See 21 Opinionsof the Attorney General 765 (1936); 22 Opinions of the AttorneyGeneral 719 (1937); 23 Opinions of the Attorney General 589 (1938); 24 Opinions of the Attorney General 837 (1939). However, these opinions were effectively overruled with the passage of Chapter 790 of the Laws of Maryland 1941; this enactment, now codified at TG § 7-201(d)(2), provided that the written form of title of the account is controlling, notwithstanding a parole agreement to the contrary. See 26 Opinions of the AttorneyGeneral 475 (1941).
[2] Costs and expenses of administration include such items as appraisers' fees under ET § 7-202(d).
[3] While TG § 7-225(a) requires property (probate or non-probate) to be "appraised in the manner provided in Title 7, Subtitle 2 of the Estates and Trusts Article," this language does not make the revision of value provision in TG § 7-204 of that subtitle applicable to non-probate assets. The language itself refers only to "appraisal" and does not refer to "revision of value" or reappraisal. Moreover, the Revisor's Note accompanying TG § 7-225(a) states that subsection (a) "is new language derived without substantive change from the first sentence of former Article 81, § 169(b)." The former law simply provided that the non-probate property reported in the inventory was to be appraised for the purpose of determining the amount of tax then due and payable; the former law did not provide for reevaluation.
[4] "Vest in possession" is a term of art referring to the vesting of the right to receive, not actual receipt of the property. See Polhaus v. Register of Wills, 248 Md. 625, 630-31,238 A.2d 91 (1968); Shaughnessy v. Perlman, 198 Md. 619,85 A.2d 38 (1951); Lilly v. State, 156 Md. 94, 143 A.2d 661 (1928); 40Opinions of the Attorney General 501, 504 (1955); 25 Opinionsof the Attorney General 625, 628 (1940); 21 Opinions of theAttorney General 720, 721 (1936).
 *Page 261